**UNITED STATES DISTRICT COURT
DISTRICT OF NEW JERSEY**

| | |
|---|---|
| **JOEL MARTINEZ,** | Civil Action No. 15-2932 (BRM) |
| **Plaintiff,** | |
| v. | **MEMORANDUM OPINION** |
| **COLONEL JOSEPH R. FUENTES, et al.,** | |
| **Defendants.** | |

**BONGIOVANNI, Magistrate Judge**

This matter comes before the Court upon Plaintiff Joel Martinez's ("Plaintiff" or "Martinez") motion to compel the production of four documents being withheld by the New Jersey State Police (the "NJSP"), a non-party in this matter, based on the attorney-client privilege, deliberative process privilege and/or self-critical analysis privilege. NJSP opposes Plaintiff's motion, arguing that the documents at issue are protected both by the deliberative process privilege and self-critical analysis privilege. The Court has fully reviewed and considered all arguments made in support of and in opposition to Plaintiff's motion to compel. The Court considers Plaintiff's motion without oral argument pursuant to L.Civ.R. 78.1(b). For the reasons set forth more fully below, Plaintiff's motion is DENIED.

### I. Background and Procedural History

This is a civil rights matter, arising from the alleged wrongful arrest of Plaintiff by Defendant Trooper I Jose G. Rivera ("Trooper Rivera") on April 26, 2013. Plaintiff alleges that a personal history existed between him and Trooper Rivera: Trooper Rivera had an extramarital affair with Plaintiff's wife and displayed a general animosity toward Plaintiff. (Compl. ¶¶ 21,

22). On April 26, 2013, a verbal altercation ensued between Plaintiff and Trooper Rivera. (*Id*. ¶ 18). Subsequent to same, Trooper Rivera arrested Plaintiff. (*Id*. ¶ 16). As a result of the arrest, Plaintiff was charged with disorderly conduct; though ultimately the charges against him were dismissed by the municipal court. (*Id*. ¶ 25).

On April 26, 2013, while he was detained, Plaintiff made a verbal complaint to the NJSP, outlining "Trooper Rivera's personal history and animus against Plaintiff, [and] Rivera's affair with Plaintiff's wife[.]" (*Id*. ¶ 22). On April 29, 2013, DSG Ismael E. Vargas ("Vargas") opened an investigation into Plaintiff's "allegations of false arrest, conflict of interest and failure to notify the Division of Information." (*Id*. 23). Vargas completed the investigation on October 16, 2014, ultimately determining that the investigation "had failed to develop sufficient evidence to substantiate [Martinez's] allegations[.]" (*Id*. ¶ 24). On December 29, 2014, Captain Scott Ebner sent Plaintiff a letter informing him of the investigatory findings. (*Id*. ¶ 24).

Based on the foregoing, Plaintiff filed the instant litigation, asserting claims against Trooper Rivera under 42 U.S.C. § 1983 and the New Jersey Civil Rights Act ("NJCRA"), alleging that Trooper Rivera's conduct violated his "federal constitutional rights to be free from unlawful restraint, unlawful seizure, warrantless and wrongful arrest and unreasonable searches of his person and property, and malicious prosecution for charging Plaintiff with disorderly conduct" and sought to punish Plaintiff for his "protected speech[.]" (*Id*. ¶¶ 28, 31). Plaintiff also asserted claims against six of Trooper Rivera's supervisors – Colonel Joseph R. Fuentes, Colonel Patrick Callahan, Major Kevin Dunn, Acting Major Mark Wondrack, Captain Scott Ebner and DSG Ismael E. Vargas (the "Supervisory Defendants") – asserting that they maintained a "policy of lax or no supervision and lax or no correction of subordinates when they engage in conduct that violates" the Constitution and that the Supervisory Defendants failed to

properly train, supervise or discipline Trooper Rivera. (*Id*. ¶¶ 36-38). Plaintiff asserted the aforementioned claims against Trooper Rivera and the Supervisory Defendants in their official and individual capacities. (*Id*. ¶ 14).

All Defendants moved to dismiss the claims asserted against them in their official capacities on August 19, 2015. (*See, generally,* Def. Mot. to Dismiss; Docket Entry No. 12). The Supervisory Defendants also moved to dismiss the substantive claims Plaintiff asserted against them based on their alleged supervisory liability under 42 U.S.C. § 1983 for failure to state a claim. (*Id*.) The District Court granted Defendants' motion to dismiss the claims asserted against them in their official capacities as well as the Supervisory Defendants motion to dismiss Plaintiff's supervisor liability claims on February 3, 2016. (*See* Op. and Order of 2/3/2016; Docket Entry Nos. 19 & 20). Thus, the only claims that remain in this case are those asserted by Plaintiff against Trooper Rivera.

After a decision was rendered on Defendants' motion to dismiss, the Court conducted an Initial Pretrial Conference on May 17, 2016. As a result of that conference, a schedule was entered in this matter. (*See* Scheduling Order of 5/18/2016; Docket Entry No. 24). Pursuant to same, all motions to amend the pleadings had to be filed by August 10, 2016. (*Id*. at 1). That deadline was later twice extended in order to provide Plaintiff with sufficient time to review certain material subpoenaed from the NJSP before having to move to amend. (*See* Letter Orders of 8/10/2016 and 9/23/2016; Docket Entry Nos. 27 & 31). On October 19, 2016 during a telephone conference conducted by the Court, the deadline to move to amend was adjourned again to allow Plaintiff to file and obtain a decision on the instant motion to compel before being required to move to amend his Complaint. (*See* Minute Entry of 10/19/2016).

Via the instant motion, Plaintiff seeks to compel the NJSP to produce four documents that are either being partially or fully withheld from production: (1) NJSP Martinez 001- NJSP Martinez 006, Internal Investigation 2013-0216, Allegations & Conclusions; (2) NJSP Martinez 009- NJSP Martinez 030, Internal Investigation 2013-0216 report; (3) NJSP Martinez 059 – NJSP Martinez 063, Memorandum RE: Internal Investigation 2013-0216; and (4) NJSP Martinez 066, Letter RE: Internal Investigation 2013-0216. (*See* Br. in Support of Motion to Compel ("Pl. Br.") at 2-3, Docket Entry No. 32-1; Ex. A to Motion to Compel, Docket Entry No. 33). The NJSP has refused to produce these documents. In its privilege log, the NJSP indicates that these documents are protected by the deliberative process privilege, self-critical analysis privilege and/or the attorney-client privilege.[1] However, the NJSP in its opposition brief relies solely on the deliberative process privilege and self-critical analysis privilege to oppose Plaintiff's motion. Since the NJSP bears at least the initial burden of establishing that each privilege applies, the Court does not address the applicability of the attorney-client privilege. *See Redland Soccer Club, Inc. v. Dept. of Army of U.S.*, 55 F.3d 827, 854 (3d Cir. 1995) (noting that "initial burden of showing [deliberative process] privilege applies is on the government."); *Bobryk v. Durand Glass Mfg. Col, Inc.*, Civil No. 12-5360 (NLH/JS), 2013 WL 5604342, *3 (D.N.J. Oct. 11, 2013) (noting that party claiming self-critical analysis privilege bears burden to prove it exists and applies); *Louisiana Mun. Police Employees Ret. Sys. v. Sealed Air Corp.*, 253 F.R.D. 300, 305 (D.N.J. 2008) (noting that "[t]he party asserting the attorney-client privilege bears the burden to show that it applies.") The NJSP has not even attempted to meet its burden of establishing the applicability of same.

---

[1] Additional privileges are claimed with respect to NJSP Martinez 001- NJSP Martinez 006. The parties do not address same in their briefing on this motion. As such, neither does the Court herein.

Plaintiff argues that the four documents at issue are "of central importance to the question of possible culpability on the part of State Police officials of supervisory or policy making status." (Pl. Br. at 2). Indeed, Plaintiff claims that the withheld documents are "central to the question of whether Plaintiff would seek relief in this case against the supervisory or policy making officials of the New Jersey State Police." (*Id*.) Plaintiff explains that "[i]n the context of a 'Monell' claim (or a supervisory liability claim) alleging a denial of constitutional rights via unlawful and unconstitutional policy, practice or custom, a plaintiff claiming culpability on the part of superiors may focus upon the inadequacies or even bankruptcies of an internal affairs process or internal affairs investigations--to show the culpability of the upper echelon for a constitutional tort." (*Id*. at 5). Plaintiff argues that "the complete internal affairs investigation file, including the evaluative portions and all those parts that show how the decision-makers considered, weighed, and utilized the evidence to reach the agency's decision of 'unsubstantiated'" is needed in order to honestly "evaluate the fairness of the decision to reject [Plaintiff's] claim[.]" (*Id*. at 6).

Plaintiff maintains that his need for the information at issue outweighs the NJSP's claims of privilege. In this regard, Plaintiff notes that the materials he seeks contain "the how and why of the state' [sic] police's evaluation of Defendant Rivera's conduct and its ultimate rejection of the citizen complaint that the arrest was wrongful and the Trooper wrongful in his conduct." (*Id*. at 8). Plaintiff argues that he "needs to know whether the agency's assessment of Rivera's conduct was fair and balanced, or instead tendentious and partisan-- and thus revelatory of a condoning or acquiescence in wrongful, unconstitutional conduct and abuse of power." (*Id*.) Indeed, Plaintiff contends that "[t]he stuff of the superiors' evaluation of Rivera's conduct may speak volumes as to what policies the state police had or failed to have, and as to whether they

5

acquiesced in wrongful conduct by failing to impose a sanction." (*Id*.) Plaintiff claims that what is at issue here "is the importance of transparency" and "[f]ull disclosure as to how the superior [sic] of Rivera came to their decision will reveal or reflect the policies or lack of polices, the fairness or lack of fairness in how this police agency and its higher-ups handle a claim of abuse of official power for personal ends." (*Id*. at 9). Plaintiff argues that "[t]he factual materials released under the subpoena raise serious questions as to the basis of Rivera's conduct" and, as such, Plaintiff "deserves a chance to see the entire report with all of its analysis, recommendations and ways and means of reaching its result." (*Id*. at 10). Plaintiff also claims that "[t]he notion that disclosure would somehow chill future reviews seems nonsensical when one considers that in this case the publicly revealed stance of the agency is that the citizen's complaint is meritless." (*Id*.)

The NJSP, however, maintains that the four documents at issue are protected from disclosure by the deliberative process and self-critical analysis privilege and that even after balancing Plaintiff's need for the information, the documents should remain protected. In this regard, the NJSP argues that all four documents are pre-decisional and deliberative. Specifically, it asserts that:

> The Allegations & Conclusions of the Internal Investigation report is an evaluation by the investigating officer regarding evidence gathered during the internal investigation and his recommendation as to the merit of the Complaint. That recommendation is forwarded up the chain of command at NJSP and used in determining whether disciplinary charges should be levied against the officer. The Memorandum withheld seeks legal advice from the Office of the Attorney General on how to proceed with the Complaint, and the letter constitutes the Attorney General's response. As such, these documents are of the type of pre-decisional documents identified by the Supreme Court as worth [sic] of the application of the deliberative process privilege as all contain advisory opinion [sic] and recommendations used in the

6

> final agency decision declining to bring disciplinary charges
> against Trooper Rivera.

(NJSP Opp. Br. at 4-5; Docket Entry No. 38).

Further, the NJSP contends that on balance its need for closure outweighs Plaintiff's need for disclosure. In this regard, in light of the fact that the NJSP's evaluation occurred after the alleged violation of Plaintiff's constitutional rights, the NJSP argues it "holds no evidentiary significance to a claim of supervisory liability." (*Id*. at 6). The NJSP also argues that disclosing the subject documents "would undoubtedly result in a chilling effect upon the investigating officers' willingness to share gut feelings and anecdotal information which might subject them to criticism outside of the chain of command." (*Id*. at 8). The NJSP argues that the "interest in confidentiality to ensure that investigating officers communicate candidly outweighs Plaintiff's state [sic] interest that he requires this additional information, despite already having all facts relied upon by the officer, to determine whether supervisory liability exists." (*Id*. at 8-9). In addition, the NJSP argues that "disclosure of the State's process of determining how to proceed with internal investigations would undermine the State's deliberative process." (*Id*. at 9).

The NJSP also argues that the Allegations & Conclusions, which contain analysis of the evidence gathered in the investigation, including testimonial evidence, are subject to the self-critical analysis privilege. In this regard, the NJSP argues that disclosure of such material "could chill future agency investigative functions by discouraging witness cooperation if analysis and credibility determinations of a witness' statement are subject to public disclosure." (*Id*. at 11). In addition, the NJSP claims that "non-disclosure of the sought material promotes frank self-critique and candor in NJSP internal investigations by allowing the investigation officer to investigate the Complaint without fear of criticism outside of the chain of command." (*Id*.) The NJSP maintains that here, where "the recommendation of the investigating officer [over] whether

Plaintiff's Complaint is substantiated holds no evidentiary value to a claim of supervisory liability because the recommendation occurs after the alleged constitutional violation and does not shed light on whether the supervisor had personal involvement or knowledge" and where Plaintiff "has already been provided with the Internal Investigation report containing the identity of the investigating officer, the identities and statements of all witnesses, and all facts determined in the investigation and relied upon in the officer' determination that the Complaint was unsubstantiated[,]" further disclosure is not warranted. (*Id*. at 12).

**II.     Analysis**

The Court has broad discretion in deciding discovery issues such as those presented in Plaintiff's motion to compel. *See Gerald Chamles Corp. v. Oki Data Americas*, *Inc.*, Civ. No. 07-1947 (JEI), 2007 WL 4789040, at *1 (D.N.J. Dec. 11, 2007) (stating that it is "well-settled that Magistrate Judges have broad discretion to manage their docket and to decide discovery issues[.]")  Indeed, it is well settled that the appropriate scope of discovery and the management of requests for discovery are left to the sound discretion of the Court. *See In re Fine Paper Antitrust Litig.*, 685 F.2d 810, 817 (3d Cir. 1982) (finding that conduct of discovery is committed to sound discretion of Court). According to FED.R.CIV.P. ("Rule") 26(b):

> Unless otherwise limited by court order, the scope of discovery is as follows:  Parties may obtain discovery regarding any nonprivileged matter that is relevant to any party's claim or defense and proportional to the needs of the case, considering the importance of the issues at stake in the action, the amount in controversy, the parties' relative access to relevant information, the parties' resources, the importance of the discovery in resolving the issues, and whether the burden or expense of the proposed discovery outweighs its likely benefit.  Information within the scope of discovery need not be admissible in evidence to be discoverable.

Thus, to be discoverable, the information must be (1) relevant to any party's claim or defense; (2) nonprivileged; and (3) proportional to the needs to the case.

Here, the Court has serious concerns regarding the relevancy of the four documents at issue in Plaintiff's motion to compel. As noted above, throughout his motion, Plaintiff focuses on the relevancy of the four documents to his supervisory liability claim:

- The four documents at issue are "of central importance to the question of possible culpability on the part of State Police officials of supervisory or policy making status." (Pl. Br. at 2).

- The withheld documents are "central to the question of whether Plaintiff would seek relief in this case against the supervisory or policy making officials of the New Jersey State Police." (*Id*.)

- Plaintiff seeks disclosure of the four documents because he "needs to know whether the agency's assessment of Rivera's conduct was fair and balanced, or instead tendentious and partisan-- and thus revelatory of a condoning or acquiescence in wrongful, unconstitutional conduct and abuse of power." (*Id*.)

- "The stuff of the superiors' evaluation of Rivera's conduct may speak volumes as to what policies the state police had or failed to have, and as to whether they acquiesced in wrongful conduct by failing to impose a sanction." (*Id*.)

- What is at issue here "is the importance of transparency." "Full disclosure as to how the superior [sic] of Rivera came to their decision will reveal or reflect the policies or lack of polices, the fairness or lack of fairness in how this police agency and its higher-ups handle a claim of abuse of official power for personal ends." (*Id*. at 9).

As this case currently stands, however, there are no supervisory liability claims in the operative Complaint. Instead, the District Court dismissed same on February 3, 2016, finding

9

that Plaintiff "failed to allege sufficient facts under the deliberate indifference theory to state a claim of supervisory liability" and likewise failed to "state a claim under the knowledge and acquiescence theory of supervisory liability." (Op. of 2/3/2016 at 7, 8). Thus, the only claims that remain are Plaintiff's 42 U.S.C. § 1983 and NJCRA claims against Trooper Rivera.

"The purpose of discovery is to uncover evidence of the facts pleaded in the Complaint, not 'to find a cause of action.'" *Smith v. Lyons, Doughty & Veldhuius*, Civil Action No. 07-5139, 2008 WL 2885887, *5 (D.N.J. July 23, 2008) (quoting *Ranke v. Sanofi-Synthelabo Inc.*, 436 F.3d 197, 204 (3d Cir. 2006) (citation omitted). Discovery is meant to bear on the claims and defenses actually present in a matter. It "should not serve as a fishing expedition during which Plaintiff searches for evidence in support of facts he has not yet pleaded." *Smith*, 2008 WL 2885887, at *5. "'The discovery rules are designed to assist a party to prove a claim it reasonably believes to be viable without discovery, not to find out if it has any basis for a claim.'" *Claude P. Bamberger Intern., Inc. v. Rohm and Haas Co.*, No. CIV 96-1041 (WGB), 1998 WL 684263, *2 (D.N.J. April 1, 1998) (quoting *Micro Motion, Inc. v. Kane Steel Co., Inc.*, 894 F.2d 1318, 1326 (Fed. Cir. 1990)). Here, there is presently no cause of action for supervisory liability and the facts alleged are insufficient to support such a claim. As a result, the Court is hard-pressed to find that the discovery sought by Plaintiff is "relevant to any party's claim" under Rule 26(b).

Nevertheless, even if the Court were to assume that the information sought was at least marginally relevant to Plaintiff's present claims, the Court would also find that the four documents have been appropriately withheld under the deliberative process privilege. The deliberative process privilege "permits the government to withhold documents containing 'confidential deliberations of law or policymaking, reflecting opinions, recommendations or

advice.'" *Redland Soccer*, 55 F.3d at 853 (quoting *In re Grand Jury*, 821 F.2d 946, 959 (3d Cir. 1987)). It "'protects agency documents that are both predecisional and deliberative.'" *Abdelfattah v. U.S. Dept. of Homeland Sec.*, 488 F.3d 178, 183 (3d Cir. 2007) (quoting *Judicial Watch, Inc. v. FDA*, 449 F.3d 141, 151 (D.C.Cir. 2006)). The privilege "recognizes 'that were agencies forced to operate in a fishbowl, the frank exchange of ideas and opinion would cease and the quality of administrative decisions would consequently suffer.'" *Redland Soccer*, 55 F.3d at 854 (3d Cir. 1995) (quoting *First Eastern Corp. v. Mainwaring*, 21 F.3d 465, 468 (D.C.Cir. 1994) (quotations and internal ellipses omitted)).

In order to assert the deliberative process privilege, the following three procedural requirements must be satisfied: (1) the head of the department which has control over the matter must make a formal claim of privilege after actually considering the matter; (2) the responsible agency official must provide precise and certain reasons for asserting the privilege over the government information or documents at issue; and (3) the government information or documents sought to be shielded from disclosure must be identified and described. *U.S. v. Ernstoff*, 183 F.R.D. 148, 152 (D.N.J. 1998). After these three procedural requirements are met, the Court must determine whether the government has substantively established a *prima facie* case that the deliberative process privilege applies. As noted above, to do so, the government must show that the documents in question are pre-decisional and deliberative. *Abdelfattah*, 488 F.3d 178, 183 (3d Cir. 2007). In order to be pre-decisional, a document must concern an anticipated agency decision and have been generated prior to the actual decision being reached; it cannot involve a communication concerning the decision made after the decision has already been adopted. *See N.L.R.B. v. Sears, Roebuck & Co.*, 421 U.S. 132, 151-52, 95 S.Ct. 1504, 44 L.Ed.2d 29 (1975). Further, to be deliberative, a document must reflect "'advisory opinions,

recommendations and deliberations comprising part of a process by which governmental decisions and policies are formulated.'" *Id*. at 150 (quoting *Carl Zeiss Stiftung v. V.E.B. Carl Zeiss, Jena*, 40 F.R.D. 318, 324 (D.D.C. 1966)).

Here, the NJSP has met the three procedural requirements needed in order to assert the deliberative process privilege. Further, the NJSP has established that the information being withheld is predecisional and deliberative. The four withheld documents pertain to the NJSP's anticipated decision regarding whether Trooper Rivera should be sanctioned in relation to his conduct toward Plaintiff on April 26, 2013 and all four documents were created before the decision to reject Plaintiff's claim against Trooper Rivera as unsubstantiated was made. Further, the four documents expose advisory opinions, recommendations and deliberations encompassing part of the process by which the NJSP determined whether or not to sanction Trooper Rivera. As such, the Court finds that the NJSP appropriately withheld the documents in question based on the deliberative process privilege.

The Court's analysis, however, does not end there because "[t]he privilege, once determined to be applicable, is not absolute." *Redland Soccer Club*, 55 F.3d at 854. Instead, after a government agency establishes that the deliberative process privilege applies, the Court performs a balancing test to weigh the parties' competing interests. "The party seeking discovery bears the burden of showing that its need for the documents outweighs the government's interest." *Id*. In balancing the parties' competing interests, the Court considers: "(i) the relevance of the evidence sought to be protected; (ii) the availability of other evidence; (iii) the 'seriousness' of the litigation and the issues involved; (iv) the role of the government in the litigation; [and] (v) the possibility of future timidity by government employees who will be forced to recognize that their secrets are violable." *Id*. (quoting *First Eastern Corp. v.*

*Mainwaring*, 21 F.3d 465, 468 n.5 (D.C. Cir. 1994)) (internal quotation marks omitted); *see Ernstoff*, 183 F.R.D. at 153.

The Court finds that Plaintiff has failed to establish that his need for the withheld documents outweighs the NJSP's interest in maintaining the confidentiality of same. Indeed, given the marginal (if any) relevance of the documents to Plaintiff's existing claims and the fact that the NJSP has already provided Plaintiff with the Internal Investigation report containing the identity of the investigating officer, the identities and statements of all witnesses and all of the facts established in the investigation and relied upon by the investigating officer in determining Plaintiff's complaint was unsubstantiated, coupled with the fact that Plaintiff can depose witnesses regarding the non-evaluative aspects of the Internal Investigation report, the Court finds that on balance, the NJSP's interests outweigh Plaintiff's.[2]

### III. Conclusion

For the reasons set forth above, Plaintiff's motion to compel is DENIED. An appropriate Order follows.

Dated: May 30, 2017

> s/ Tonianne J. Bongiovanni
> **HONORABLE TONIANNE J. BONGIOVANNI**
> **UNITED STATES MAGISTRATE JUDGE**

---

[2] In light of the Court's determination regarding the applicability of the deliberative process privilege, the Court does not reach the question of whether any of the documents withheld by the NJSP would also be protected from disclosure based upon the self-critical analysis privilege.