IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF NEW JERSEY

| | | |
|---|---|---|
| JOEL MARTINEZ, | : | |
| Plaintiff, | : | Civil Action No.: 15-cv-2932-BRM-TJB |
| v. | : | |
| COLONEL JOSEPH R. FUENTES, ET AL. | : | |
| | : | |
| Defendants. | | |

BRIEF IN SUPPORT OF DEFENDANT RIVERA'S MOTION FOR SUMMARY JUDGMENT

GURBIR S. GREWAL
ATTORNEY GENERAL OF NEW JERSEY
Richard J. Hughes Justice Complex
25 Market Street
P.O. Box 112
Trenton, New Jersey 08625-0112
*Attorney for Defendant Trooper Jose Rivera*

By:  Kai Marshall-Otto
     Deputy Attorney General
     (609) 376-2948
     Kai.Marshall-Otto@law.njoag.gov

## TABLE OF CONTENTS

Page

PRELIMINARY STATEMENT...........................................1

PROCEDURAL HISTORY...............................................6

STATEMENT OF FACTS..............................................7

STANDARD OF REVIEW.............................................7

ARGUMENT

    POINT I

        PLAINTIFF'S CLAIMS AGAINST RIVERA ALLEGING AN
        IMPERMISSIBLE SEARCH AND SEIZURE AMOUNTING TO
        FALSE ARREST MUST BE DISMISSED AS THE RECORD
        SHOWS THAT RIVERA ARRESTED MARTINEZ FOR THE
        UNDISPUTED DISORDERLY CONDUCT ENGAGED IN AT A
        SCHOOL BASEBALL PRACTICE AND FOR THE ASSAULT
        HE PERCEIVED MARTINEZ PERPETRATE AGAINST HIM.
        ....................................................9

    POINT II

        MARTINEZ'S CLAIM FOR MALICIOUS PROSECUTION
        MUST BE DISMISSED BECAUSE RIVERA HAD PROBABLE
        CAUSE TO ARREST HIM, AND THE ELEMENTS OF SUCH
        A CLAIM ARE OTHERWISE UNSATISFIED...................15

    POINT III

        MARTINEZ'S FIRST AMENDMENT RETALIATION CLAIM
        FAILS BECAUSE HE WAS ARRESTED NOT FOR
        PROTECTED SPEECH, BUT FOR HIS DISORDERLY
        CONDUCT AND HARRASSMENT.............................18

POINT IV

    PLAINTIFF'S EXCESSIVE FORCE CLAIM, TO THE
EXTENT ONE IS BROUGHT, MUST BE DISMISSED AS
THE RECORD SHOWS NO EVIDENCE THAT RIVERA USED
IMPERMISSIBLE FORCE WITH RESPECT TO HIS USE OF
HANDCUFFS ON DIEZ...................................19


POINT V

    AS TO ALL CLAIMS, RIVERA IS ALTERNATIVELY
ENTITLED TO QUALIFIED IMMUNITY.......................22


CONCLUSION...................................................29

## TABLE OF AUTHORITIES

### Cases Cited

*Anderson v. Davila*, 125 F.3d 148 (3d Cir.1997)..................17

*Anderson v. Creighton*, 483 U.S. 635 (1987)................22, 26

*Anderson v. Liberty Lobby, Inc.*,
    477 U.S. 242 (1986)......................................... 7

*Ashcroft v. al-Kidd*, 563 U.S. 731 (2011)..............23, 24, 25

*Barletta v. Golden Nugget Hotel Casino*,
    580 F. Supp. 614 (D.N.J. 1984)............................. 9

*Barna v. City of Perth Amboy*, 42 F.3d 809 (3d Cir. 1994)....... 9

*Bauer v. Borough of Cliffside Park*, 225 N.J.
    Super. 38 (App. Div.), certif. denied,
    113 N.J. 330 (1988)....................................... 9

*Beck v. Ohio*, 379 U.S. 89 (1964)............................. 10

*Berg v. Cnty. of Allegheny*, 219 F.3d 261 (3d Cir. 2002)....... 24

*Blacknall v. Citarella*, 168 Fed. Appx. 489 (3d Cir. 2006)..... 21

*Blaylock v. City of Philadelphia*, 504 F.3d 405,
    (3d Cir. 2007)............................................26

*Brooks v. Kyler*, 204 F.3d 102 (3d Cir. 2000)................... 7

*Brosseau v. Haugen*, 543 U.S. 194 (2004)................... 25, 27

*Celotex Corp. v. Catrett*, 477 U.S. 317 (1986)............... 7, 8

*City & Cnty. of San Francisco v. Sheehan*,
    135 S. Ct. 1765 (2015)................................. 25, 27

*Curley v. Klem*, 499 F.3d 199 *(3d Cir. 2007)*................... 19

*Dowling v City of Phila*. 855 F.2d 136 (3rd Cir. 1988)...... 9, 10

*Estate of Smith v. Marasco*, 318 F.3d 497 (3d Cir. 2003)........14

*Flood v. Schaefer*, 439 Fed. Appx. 179 (3d Cir. 2011)...... 20, 21

*Gallo v. City of Philadelphia*, 161 F.3d 217 (3d Cir. 1998).....15

*Gerstein v. Pugh*, 420 U.S. 103 (1975)........................ 10

*Gilles v. Davis*, 427 F.3d 197 (3d Cir. 2005)...................26

*Graham v. Connor*, 490 U.S. 386 (1989)........................ 19

*Graham-Smith v. Wilkes-Barre Police Dep't*,
    739 F. App'x 727 (3d Cir. 2018)........................21, 28

*Herman v. City of Millville*, 66 Fed.Appx. 363
    (3d Cir. 2003)...........................................14

*Johnson v Knorr*, 477 F.3d 75 (3rd Cir. 2007)...........9, 14, 15

*Kisela v. Hughes*, 138 S. Ct. 1148 (2018).......................25

*Kopec v. Tate*, 361 F.3d 772 (3d Cir. 2004)................... 20

*Lamont v. New Jersey*, 637 F.3d 177 (3d Cir. 2011)............. 21

*Malley v. Briggs*, 475 U.S. 335 (1986)........................24

*Mammaro v. N.J. Div. of Child Prot. & Permanency*,
    814 F.3d 164 (3d Cir. 2016).............................. 25

*Matsushita Electric Industrial Co. v. Zenith Radio Corp.*, 475
    U.S. 574 (1986).......................................... 8

*Messerschmidt v. Millender*, 565 U.S. 535 (2012)...........23, 24

*Moore v. Vangelo,* 222 Fed. Appx. 167 (3d Cir. 2007).......... 21

*Mullenix v. Luna*, 136 S. Ct. 305 (2015)....................23-27

*Orsatti v. N.J. State Police*, 71 F.3d 480 (3d Cir. 1995)...... 10

*Pearson v. Callahan,* 555 U.S. 223 (2009)..................... 22

*Penberth v. Krajnak*, 347 Fed. Appx. 827 (3d Cir. 2009).........16

*Pollock v City of Phila.*, 403 Fed. Appx. 664
    (3rd Cir. 2010).......................................... 9

*Plumhoff v. Rickard*, 134 S. Ct. 2012 (2014)...............23, 24

*Pulice v. Enciso*, 39 F. App'x 692 (3d Cir. 2002)..........17, 18

*Reedy v. Evanson*, 615 F.3d 197 (3d Cir. 2010)................. 22

*Reichle v. Howards*, 566 U.S. 658 (2012).................. 23, 28

*Saucier v. Katz*, 533 U.S. 194 (2001)..................... 23, 25

*Scott v. Harris*, 127 S. Ct. 1769 (2007),........................ 8

*Smith v. Marasco*, 318 F.3d 497 (3d Cir. 2003)..................18

*State v. Davis*, 50 N.J. 16, 231 A.2d 793 (1967),
     cert. denied, 389 U.S. 1054 (1968).........................10

*Theodore Fleming v. United Parcel Service, Inc. et al.*,
     255 N.J. Super. 108 (Law Div. 1992)....................... 9

*Todaro v. Bowman,* 872 F.2d 43 (3d. Cir. 1989)................. 7

*Torres v. McLaughlin*, 163 F. 3d 169 (3d Cir. 1998)............15

*U.S. v. Cruz*, 910 F.2d 1072 (3d Cir. 1990).....................10

*Velius v. Township of Hamilton*, 466 Fed. Appx. 133
     (3d Cir. 2012)............................................ 21

*White v. Pauly*, 137 S. Ct. 548 (2017)..........................24

*Wildoner v. Borough of Ramsey*, 162 N.J. 375 (2000).............14

*Williams v. Sec'y Pa. Dep't of Corr.*, 848 F.3d 549
     (3d Cir. 2017)............................................ 23

*Wiltz v. Middlesex County Office of the Prosecutor*,
     2006 U.S. Dist. LEXIS 46821,*13-18(D.N.J. 2006),
     aff'd, 249 Fed.Appx. 948 (3d Cir. 2007)...................16

*Wilson v. Layne*, 526 U.S. 603 (1999).......................... 26

*Zaloga v. Borough of Moosic*, 841 F.3d 170 (3d Cir. 2016).......24

## **Statutes Cited**

42 U.S.C. § 1983...............................................4

42 U.S.C. § 1988...............................................4

N.J. Stat. Ann. § 2C:33-2 (West)..............................11

N.J.S.A. 2C:33-2.......................................10-11, 13

N.J.S.A. 2C:33-4.......................................10-11, 12

## **Rules Cited**

Fed. R. Civ. P. 56.......................................... 7

## **United States Constitution Cited**

U.S. Const. Amend I..............................5, 6, 17-19, 28

U.S. Const. Amend IV...............................6, 13-15, 19

U.S. Const. Amend VIII.....................................23

U.S. Const. Amend XIV......................................23

## **PRELIMINARY STATEMENT**

This is a case of a man, Plaintiff Joel Martinez, who, scorned by marital infidelity, acted out in anger in a disorderly manner on the grounds of the Lawrenceville School, interrupted a school baseball practice, and was arrested. By way of this lawsuit, Mr. Martinez seeks his revenge against the man with whom his wife had an affair, Defendant Trooper Jose Rivera. Parsing through the marital drama, all that remains in this case is the lawful arrest of a man engaged in disorderly conduct on school grounds. The case must be dismissed on Summary Judgment.

The facts adduced over the course of discovery demonstrate that on April 26, 2013, Trooper Rivera was lawfully, and at the invitation of the Lawrenceville School, on school grounds attending a youth baseball practice in his role as a volunteer coach. Trooper Rivera was also in uniform as a New Jersey State Trooper and drove to the school – which was within his patrol zone that day - in his troop car while on duty, to engage in what is known as community policing.

Sometime after Rivera arrived and was assisting with the practice, Martinez, who had previously lived on the grounds of the Lawrenceville School, but no longer did, arrived on the scene loudly yelling at Rivera, in front of all of the student athletes, about Rivera's prior involvement in Martinez's marital troubles. Rivera and Martinez's wife, Vicky Martinez, had engaged in an

2

affair about two years earlier. Martinez felt it necessary to prevent the school baseball practice from proceeding by loudly addressing his anger over this past affair to Rivera in front of school-age children. Rivera, an on duty Trooper, determined that it was his duty to bring order to the chaos wrought by Martinez on the practice. Rivera had no choice but to deal with the explosive situation himself, as he was the only law enforcement officer on the scene, having been specifically targeted by Martinez.

Rivera escorted Martinez away from the students – so that the baseball practice could resume and they would not be subjected to further disturbing conduct by Martinez - and toward the area where Rivera's trooper car and Martinez's civilian vehicle were parked. Martinez continued to insult Rivera and assert baselessly that he should not be on school grounds. Then Rivera felt himself being grabbed by Martinez, at which time he proceeded with Martinez's arrest. Martinez was charged with two disorderly persons offenses, disorderly conduct and harassment. These charges were premised upon his behavior in preventing the baseball practice from proceeding in an orderly fashion – due to his loud, offensive, inflammatory statements in front of minors – as well as Rivera's belief that Martinez had made assaultive physical contact with him.

Martinez's disorderly conduct in front of minors - which prevented the orderly carrying out of a school baseball practice

3

– was enough to justify his arrest. And the law is clear that where there is probable cause for one of multiple charges under which an arrest is made, there can be no cause of action for wrongful arrest. The inquiry may properly end here.

In any event, though, the arrest based on Rivera's belief that Martinez had grabbed him was also independently lawful. Subsequent to his arrest, while in a holding cell, Martinez in fact told State Police Sergeant Thomas Murtha that he had grabbed Rivera's arm, and further than he regretted his behavior in front of minors on school grounds. Some five years later, at his deposition, Martinez testified differently, stating that he never grabbed Rivera. The eye witnesses deposed in this matter either were not on the scene of the alleged grab and subsequent arrest, or otherwise did not see it. Accordingly, there is now a dispute of fact as to whether the grab in fact occurred; there is no dispute, however, that Martinez near-contemporaneously with his arrest told Sergeant Murtha that he had grabbed Rivera. In any event, whether there was indeed intentional physical contact by Martinez is not dispositive of the instant motion. What is most relevant is that Rivera perceived himself being grabbed – a belief which is not disputed – and thus reasonably believed that he had been assaulted and thus understood Martinez's arrest to be entirely lawful and otherwise necessary to maintain the peace at the scene. The arrest was conducted in good faith, and accordingly so too was

4

the prosecution of the charges stemming from the arrest, predicated upon the same facts. Those charges were later dismissed based on prosecutorial discretion.

All remaining claims in this case – Counts I and II – must be dismissed. The claims are made pursuant to 42 USC § 1983 and 1988, brought coextensively with the New Jersey Civil Rights Act[1].

Count I asserts that Rivera "violated Plaintiff's federal constitutional rights to be free from unlawful restraint, unlawful seizure, warrantless and wrongful arrest and unreasonable searches of his person and property, and malicious prosecution for charging Plaintiff with disorderly conduct." Based upon the facts alleged, it can be gleaned that Plaintiff claims that (1) the seizure of his person amounted to an unlawful arrest; and (2) that the charges against him amount to malicious prosecution.[2]

As noted above, Rivera arrested and charged Plaintiff due to his disruptive and inappropriate conduct in front of school-age children, and due to his belief that Plaintiff made physical contact with him amounting to an assault. To the extent that Plaintiff contends that physical contact did not happen, there is

---

[1] § 1983 and NJCRA claims are analogs of one another, and as such a dismissal of any given claim under § 1983 necessitates a dismissal of the same claim under the NJCRA.

[2] In the event the Plaintiff contends that he brings other claims other than those addressed herein, the Defense should have an opportunity to also address them on reply, as it is ultimately unclear how many separate claims Plaintiff is attempting to bring in Count I.

no evidence that Rivera's belief that he had indeed been assaulted was formed in bad faith. The arrest was lawful, and accordingly the prosecution cannot have been malicious. Count I must be dismissed in its entirety.

Count II brings a claim alleging that Rivera violated Plaintiff's First Amendment rights by punishing him for engaging in speech that was critical of Rivera. This First Amendment retaliation claim fails for the simple reason that Martinez was arrested not for his protected speech, but for his disorderly conduct. The fact that he may have engaged in protected speech critical of the arresting officer in the course of his disorderly conduct does not insulate his behavior from the law.

Plaintiff's Second Count, in passing, also states that Rivera committed as assault. The Complaint, however, does not plead a single fact suggesting an excessive force claim. In any event, while not conceding that the Complaint contains such a claim, the Defense will demonstrate that no such claim could survive in any event. The record reflects that Martinez had some red marks from his handcuffs after his arrest, but that he never saw a medical professional about them and that they quickly disappeared and caused him no permanent injury. No excessive force claim exists in this case, and in any event it could not survive if it did.

In the alternative, qualified immunity should be granted as to all claims. Rivera's actions were reasonable under the

circumstances known to him at the time, and there is no clearly established law governing the specific set of facts in this case.

For these reasons, Rivera respectfully requests that summary judgment be granted as to all causes of action raised against him.

## PROCEDURAL HISTORY

Plaintiff's Complaint was filed on April 24, 2015. [ECF No. 1]. Thereafter, Defendants filed a motion to dismiss, which was granted in its entirety and left only the individual capacity claims – contained in Counts I and II of the Complaint - against Defendant Rivera for alleged violations of Plaintiff's First, Fourth, and Fourteenth Amendment rights. [ECF Nos. 18-19].

Amended pleadings in this matter were initially due August 10, 2016, the deadline subsequently being extended to September 23, 2016 and then to fourteen days after decision on Plaintiff's Motion to Compel, which was decided on May 30, 2017. [ECF Nos. 24, 27, 40-41]. No amended pleadings were ever filed, and as such the initial complaint, and the facts pled therein, operate in this matter.

A number of extensions were granted to allow for the completion of fact discovery, and to permit additional time for the parties to serve expert reports. No expert reports were ultimately served in this matter. The most recent scheduling order in this matter extended the dispositive motion filing deadline to April 12, 2019. [ECF No. 60].

This Motion for Summary Judgment now Follows.

## STATEMENT OF FACTS

Pursuant to L. Civ. R. 56.1, Rivera has filed a separate statement of undisputed material facts ("SOMF") and, in the interest of avoiding repetition, it will not be reproduced here.

## STANDARD OF REVIEW

Summary judgment may be granted if all probative materials of record, viewed with all inferences in favor of the non-moving party, demonstrate that there is no genuine issue of material fact and that the movant is entitled to judgment as a matter of law. Fed. R. Civ. P. 56(a); *Brooks v. Kyler*, 204 F.3d 102, 105 n.5 (3d Cir. 2000); *Celotex Corp. v. Catrett*, 477 U.S. 317, 330 (1986); *Todaro v. Bowman*, 872 F.2d 43, 46 (3d. Cir. 1989). An issue is "genuine" only if a reasonable jury could possibly hold in the non-movant's favor with regard to that issue. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 247-48 (1986). A fact is "material" only if it influences the outcome under the applicable law. *Id.* at 248.

The moving party bears the initial burden of demonstrating either (1) that there is no genuine issue of material fact and that as a matter of law, the moving party must prevail, or (2) that the non-moving party has not shown facts relating to an essential element of the issue for which he bears the burden. *Celotex Corp. v. Catrett*, *supra*, 477 U.S. at 331. Once either

showing is made, the burden shifts to the non-moving party, who must demonstrate facts which support each element for which he bears the burden and establish the existence of genuine issues of material fact. *Id.*  To satisfy this burden, the non-moving party must produce sufficient evidence to support a jury verdict in his favor and not just create some metaphysical doubt as to material facts. *Matsushita Electric Industrial Co. v. Zenith Radio Corp.*, 475 U.S. 574 (1986).

In *Scott v. Harris*, 127 S. Ct. 1769 (2007), the Supreme Court held that although courts deciding summary judgment motions generally must view disputed facts in favor of the non-moving party, this rule does not apply when the opposing party's version of the facts "is blatantly contradicted by the record, so that no reasonable jury could believe it." *Id.* at 1776.  When presented with such evidence, a court should not engage in the "fiction" of viewing the facts in the light most favorable to the non-moving party. *Id.*

For the reasons that follow, Rivera is entitled to summary judgment as to all claims set forth in the Complaint.

## ARGUMENT

## POINT I

**PLAINTIFF'S CLAIMS AGAINST RIVERA ALLEGING AN IMPERMISSIBLE SEARCH AND SEIZURE AMOUNTING TO FALSE ARREST MUST BE DISMISSED AS THE RECORD SHOWS THAT RIVERA ARRESTED MARTINEZ FOR THE UNDISPUTED DISORDERLY CONDUCT ENGAGED IN AT A SCHOOL BASEBALL PRACTICE AND FOR THE ASSAULT HE PERCEIVED MARTINEZ PERTETRATE AGAINST HIM.**

Martinez's claim that he was subjected to a search and seizure that amounted to false arrest should be dismissed because Rivera had probable cause to arrest him for disorderly conduct and harassment.[3] A successful claim of false arrest mandates that a plaintiff affirmatively demonstrate a lack of probable cause for the arrest. A finding of probable cause thus defeats such a claim. *Dowling v City of Phila.* 855 F.2d 136, 141 (3rd Cir. 1988); *Pollock v City of Phila.*, 403 Fed. Appx. 664, 669 (3rd Cir. 2010); *Theodore Fleming v. United Parcel Service, Inc. et al.*, 255 N.J. Super. 108 (Law Div. 1992) (citing *Barletta v. Golden Nugget Hotel Casino*, 580 F. Supp. 614, 617 (D.N.J. 1984); *Bauer v. Borough of Cliffside Park*, 225 N.J. Super. 38, 47 (App. Div.), certif. denied, 113 N.J. 330 (1988)). Moreover, in the case where multiple charges may have

---

[3] To the extent Martinez attempts to bring a separate claim alleging an illegal search of his person, the Complaint did not plead facts suggesting such a cause of action, no evidence to support such a claim has been adduced in this case, and any search for weapons and contraband of Martinez's person was simply incidental to his arrest. *See* SOMF ¶ 12, Deposition Exhibit 10. A separate claim alleging an illegal search cannot survive.

been lodged, a court need only find that probable cause existed as to one of the charges to insulate a defendant from liability. *Johnson v Knorr*, 477 F.3d 75, 85 (3rd Cir. 2007) (quoting *Barna v. City of Perth Amboy*, 42 F.3d 809, 819 (3d Cir. 1994)).

Probable cause is "defined in terms of facts and circumstances sufficient to warrant a prudent man in believing that the suspect had committed or was committing an offense." *Gerstein v. Pugh*, 420 U.S. 103, 111-112 (1975) (quoting *Beck v. Ohio*, 379 U.S. 89, 91 (1964)). Probable cause is "something less than proof needed to convict and something more than a raw, unsupported suspicion." *State v. Davis*, 50 N.J. 16, 23, 231 A.2d 793, 797 (1967), cert. denied, 389 U.S. 1054 (1968).

"Probable cause exists when the facts and circumstances **within the arresting officer's knowledge** are sufficient in themselves to warrant a reasonable person to believe that an offense has been committed by the person to be arrested." *Orsatti v. N.J. State Police*, 71 F.3d 480, 483 (3d Cir. 1995); *U.S. v. Cruz*, 910 F.2d 1072, 1076 (3d Cir. 1990). Plaintiff's actual guilt of the crime for which he was arrested is immaterial as to whether the arresting officers had probable cause to arrest him. *See Dowling v. City of Philadelphia*, 872 F.2d 136, 141 (3d Cir. 1989) ("the proper inquiry in a §1983 claim based on false arrest...is not whether the person arrested in fact committed the offense, but whether the arresting officers had probable cause to believe the

11

person arrested had committed the offense").

On April 26, 2013, Martinez was arrested and charged with violations of New Jersey's criminal code, specifically N.J.S.A. 2C:33-2B (disorderly conduct) and 2C:33-4B (harassment).

The disorderly conduct statute, 2C:33-2, reads:

a. Improper behavior. A person is guilty of a petty disorderly persons offanse, if with purpose to cause public inconvenience, annoyance or alarm, or recklessly creating a risk thereof he

(1) Engages in fighting or threatening, or in violent or tumultuous behavior; or

(2) Creates a hazardous or physically dangerous condition by any act which serves no legitimate purpose of the actor.

b. Offensive language. A person is guilty of a petty disorderly persons offense if, in a public place, and with purpose to offend the sensibilities of a hearer or in reckless disregard of the probability of so doing, he addresses unreasonably loud and offensively coarse or abusive language, given the circumstances of the person present and the setting of the utterance, to any person present.

"Public" means affecting or likely to affect persons in a place to which the public or a substantial group has access; among the places included are highways, transport facilities, schools, prisons, apartment houses, places of business or amusement, or any neighborhood.

N.J. Stat. Ann. § 2C:33-2 (West).

The harassment statute, 2C:33-4, reads:

Except as provided in subsection e., a person commits a petty disorderly persons offense if, with purpose to harass another, he:

a. Makes, or causes to be made, a communication or

communications anonymously or at extremely
inconvenient hours, or in offensively coarse
language, or any other manner likely to cause
annoyance or alarm;

b. Subjects another to striking, kicking, shoving,
or other offensive touching, or threatens to do so;
or;

c. Engages in any other course of alarming conduct
or of repeatedly committed acts with purpose to
alarm or seriously annoy such other person.

A communication under subsection a. may be deemed
to have been made either at the place where it
originated or at the place where it was received.

d. (Deleted by amendment, P.L.2001, c. 443).

e. A person commits a crime of the fourth degree
if, in committing an offense under this section, he
was serving a term of imprisonment or was on parole
or probation as the result of a conviction of any
indictable offense under the laws of this State,
any other state or the United States.

N.J. Stat. Ann. § 2C:33-4 (West).

If the record demonstrates that the facts and circumstances
within Rivera's knowledge reasonably suggest Martinez committed
just one of the above offenses, there was probable cause for the
arrest and the claim must be dismissed. And that is precisely what
the facts show.

The undisputed evidence shows that Martinez prevented the
orderly carrying out of a school baseball practice on the date in
question, approaching the field to loudly berate assistant coach,
and State Trooper, Rivera, over long-held resentments from an
extramarital affair. SOMF ¶¶ 2-6. Martinez's behavior was entirely

13

improper and tumultuous, as he himself admitted; and it was offensive, especially in light of the audience of minors at the school baseball practice. *Id.*, ¶¶ 15-16. There was probable cause for the arrest under the disorderly conduct statute. 2C:33-2. *See Id.,* SOMF ¶ 13.

There was also probable cause for the arrest under the harassment statute. 2C:33-4. Once Rivera removed Martinez from the situation to prevent further disruption to the school practice, he perceived Mr. Martinez assault him by grabbing him on the arm. SOMF ¶12. It is undisputed that Rivera believed himself to have been grabbed by Martinez, and that once back at the station Martinez admitted the grab to Sgt. Murtha. SOMF ¶¶ 12, 15. Because Martinez now denies the grab, whether it in fact occurred is now disputed. But because Rivera indisputably believed he was grabbed, it is immaterial whether he in fact was because he was entitled to act on the facts and circumstances known him at the time; and he did. *See Orsatti*, 71 F.3d at 483.

The Defense need only show that there was probable cause as to one of the two statutes under which Martinez was charged in order to defeat the wrongful arrest claim. It has demonstrated probable cause under both. The wrongful arrest claim must be dismissed.

<u>**POINT II**</u>

**MARTINEZ'S CLAIM FOR MALICIOUS PROSECUTION MUST BE DISMISSED BECAUSE RIVERA HAD PROBABLE CAUSE TO ARREST HIM, AND THE ELEMENTS OF SUCH A CLAIM ARE OTHERWISE UNSATISFIED.**

"To prove a malicious prosecution under section 1983 when the claim is under the Fourth Amendment, a plaintiff must show that (1) the defendant initiated a criminal proceeding; (2) the criminal proceeding ended in his favor; (3) the defendant initiated the proceeding without probable cause; (4) the defendant acted maliciously or for a purpose other than bringing the plaintiff to justice; and (5) the plaintiff suffered deprivation of liberty consistent with the concept of seizure as a consequence of a legal proceeding. *Johnson v. Knorr*, 477 F.3d 75, 82 (3d Cir. 2007) (quoting *Estate of Smith v. Marasco*, 318 F.3d 497, 521 (3d Cir. 2003).

Probable cause is an absolute defense to § 1983 and state law claims for false imprisonment and malicious prosecution. *Herman v. City of Millville*, 66 Fed.Appx. 363, 366 n.3 (3d Cir. 2003). *Wildoner v. Borough of Ramsey*, 162 N.J. 375, 389 (2000).

In this case, as noted in the analysis in Point I above, probable cause existed for each offense for which Martinez was arrested. This dooms the malicious prosecution claim, and the inquiry may end there. However, even if this court finds that there was no probable cause as to one of the two charges, Martinez

15

"cannot establish a Fourth Amendment malicious prosecution claim because the prosecution for the additional charges for which there might not have been probable cause, in no way resulted in any additional restrictions on his liberty beyond those attributable to the prosecution on the . . . charges for which there was probable cause." *Knorr*, *supra*, 477 F.3d at 85.

Furthermore, a claim of malicious prosecution cannot be established absent a showing of deprivation of liberty consistent with the concept of seizure as a consequence of a legal proceeding. *See Knorr*, *supra*, 477 F.3d at 85. For purposes of malicious prosecution, "the limits of Fourth Amendment protection relate to the boundary between arrest and pretrial detention. *Torres v. McLaughlin*, 163 F. 3d 169, 174 (3d Cir. 1998).

In *Gallo v. City of Philadelphia*, 161 F.3d 217, 224 (3rd Cir. 1998), the plaintiff "was arrested for arson and posted a $10,000 bond; he was prohibited from traveling outside Pennsylvania and New Jersey, required to contact Pretrial Services on a weekly basis, and required to attend all court hearings including his trial and arraignment." In addressing whether Gallo was seized for purposes of the Fourth Amendment the court concluded, "although it was a close question, we agree with Gallo that these restrictions amounted to a seizure." 161 F.3d at 222. (emphasis added).

In contrast, the facts here demonstrate that Martinez was simply arrested, charged with disorderly conduct and harassment, and released on the same day. SOMF ¶ 13. He was not required to pay bail or stay in jail pending resolution of his charges. *Id.*

The Third Circuit has held that a deprivation such as the one experienced by Martinez is insufficient to meet the element of malicious prosecution that requires deprivation of liberty. *See Wiltz v. Middlesex County Office of the Prosecutor*, 2006 U.S. Dist. LEXIS 46821,*13-18(D.N.J. 2006), aff'd, 249 Fed.Appx. 948 (3d Cir. 2007). In *Wiltz*, the plaintiff alleged that she was wrongfully arrested. The district court found her allegations to be insufficient to meet the required element of deprivation of liberty, and the Third Circuit affirmed by stating,

> While Wiltz's complaint does allege that she was arrested, it does not allege that she was incarcerated, required to post bond, maintain contact with Pretrial Services, refrain from traveling, or that she endured any other "postindictment" deprivation of liberty as a result of the legal proceedings. *See Gallo*, 161 F.3d at 222. The District Court was correct in holding that absent such allegations, the complaint failed to state a claim for malicious prosecution actionable under § 1983 or 1985.

*Wiltz v. Middlesex County Office*, 249 Fed. Appx. 944, 948 (3d Cir. 2007). *See also Penberth v. Krajnak*, 347 Fed. Appx. 827, 829 (3d Cir. 2009) (finding that plaintiff failed to allege a deprivation

17

of liberty where he was arrested and then detained no more than 40 minutes).

This case is precisely like *Wiltz*, and there is not an iota of evidence that Martinez suffered any deprivation of liberty as a result of the legal proceedings against him. *See* SOMF ¶ 13. In fact, the charges against him were simply dismissed on prosecutorial discretion. SOMF ¶ 17.

The malicious prosecution claim must be dismissed.

### POINT III

**MARTINEZ'S FIRST AMENDMENT RETALIATION CLAIM FAILS BECAUSE HE WAS ARRESTED NOT FOR PROTECTED SPEECH, BUT FOR HIS DISORDERLY CONDUCT AND HARRASSMENT.**

Count II, alleging that Rivera arrested Martinez for engaging in protected speech, is properly construed as a First Amendment retaliation claim. It must be dismissed because Martinez was arrested for his criminal conduct, irrespective of his speech.

To maintain a retaliation claim, a plaintiff must show: "first, that she engaged in protected activity; second, that the government responded with retaliation; third, that this protected activity was the cause of the government's retaliation. *Pulice v. Enciso*, 39 F. App'x 692, 696 (3d Cir. 2002) (citing *Anderson v. Davila*, 125 F.3d 148, 161 (3d Cir.1997)).

In *Pulice*, the Plaintiff brought a retaliation claim against police officers who arrested her in the course of her attempt to

obstruct a gas company's right of way on her property. She claimed that the officers arrested her in retaliation for what she characterized as a form of protest against the company, but the Court dismissed the claim on summary judgment. The Court concluded that she was, in fact, arrested for her unlawful conduct, her otherwise protected speech in opposition to the gas company's actions notwithstanding. *Id.*

This case is analogous to *Pulice*. Mr. Martinez engaged in conduct which Rivera believed, in good faith: (1) created a public disturbance constituting disorderly conduct, and (2) constituted an assault against him. *See* Point I. The fact that Mr. Martinez made personally insulting statements toward Rivera did not then insulate him from arrest for harassment and disorderly conduct. One cannot shield himself from arrest by engaging in protected activity while simultaneously breaking the law. *Id.*

It should also be noted that Mr. Martinez's personal animosity toward Rivera in forcing an interaction between them is entirely immaterial to decision on this issue. The Third Circuit, in *Estate of Smith v. Marasco*, 318 F.3d 497, 513 (3d Cir. 2003), held that:

> [A] court in considering a First Amendment retaliation claim against a police officer should be cautious in allowing it to proceed to trial in the face of the officer's summary judgment motion. In this regard we observe that officers should not by reason of potential civil liability be discouraged from intervening when their services are needed by the not surprising circumstance that a claim has been lodged against a person with whom they have had previous adverse

dealings. **Society may pay a high price if officers do not take action when they should do so.** (Emphasis added).

On the date in question, it is undisputed that Mr. Martinez approached and loudly confronted Trooper Rivera in the middle of a baseball practice with which Rivera was assisting. *See* Point I. Mr. Martinez purposely sought out and confronted him <u>because of</u> their history. Rivera was not deprived of his duties as a New Jersey State Trooper simply because the man engaging in disorderly conduct and who Rivera felt assault him had a personal grudge against him.

Rivera's actions in arresting Martinez on April 26, 2013 had nothing to do with retaliation for protected speech and everything to do with Martinez's violations of the law. The first amendment claim must be dismissed.

<u>**POINT IV**</u>

**PLAINTIFF'S EXCESSIVE FORCE CLAIM, TO THE EXTENT ONE IS BROUGHT, MUST BE DISMISSED AS THE RECORD SHOWS NO EVIDENCE THAT RIVERA USED IMPERMISSIBLE FORCE WITH RESPECT TO HIS USE OF <u>HANDCUFFS ON DIEZ.</u>**

"*[A]ll* claims that law enforcement officers have used excessive force — deadly or not — in the course of an arrest, investigatory stop, or other 'seizure' of a free citizen should be analyzed under the Fourth Amendment and its 'reasonableness' standard." *Graham v. Connor*, 490 U.S. 386, 395 (1989). "A claim for excessive force under the Fourth Amendment requires a plaintiff

to show that a seizure occurred and that it was unreasonable." *Curley v. Klem*, 298 F.3d 271, 279 (3d Cir. 2002).

"The 'reasonableness' of a particular use of force must be judged from the perspective of a reasonable officer on the scene, rather than with the 20/20 vision of hindsight." *Graham*, 490 U.S. at 396. "The calculus of reasonableness must embody allowance for the fact that police officers are often forced to make split-second judgments - in circumstances that are tense, uncertain, and rapidly evolving - about the amount of force that is necessary in a particular situation." *Id.* at 396-97.

The inquiry into the reasonableness of the force used is an objective one: "the question is whether the officers' actions are 'objectively reasonable' in light of the facts and circumstances confronting them, without regard to their underlying intent or motivation." *Id.* at 397.

Factors guiding this inquiry include: (1) the severity of the crime at issue; (2) whether the suspect poses an immediate threat to the safety of the officers or others; and (3) whether he is actively resisting arrest or attempting to evade arrest by flight. *Id.* at 396. In addition, the Third Circuit has set forth an additional non-exhaustive list of factors, including (4) the duration of the officer's action; (5) whether the action takes place in the context of effecting an arrest; (6) the possibility that the suspect may be armed; and (7) the number of others persons

at the scene with whom the officers may have to contend. *Kopec v. Tate*, 361 F.3d 772, 776-77 (3d Cir. 2004).

While courts may consider the injury suffered by the suspect in determining that the force used was not reasonable, "the central issue is the force the officers employed (and whether it was reasonable under the circumstances), not the injury they caused." *Flood v. Schaefer*, 439 Fed. Appx. 179, 182 (3d Cir. 2011). In other words, just as the lack of an injury does not necessarily negate a finding of excessive force, *Velius v. Township of Hamilton*, 466 Fed. Appx. 133, 137 (3d Cir. 2012), the presence of an injury does not render the force used excessive. *Flood*, 439 Fed. Appx. at 182.

Where officers confront a resisting suspect who poses a threat to their safety or the safety of others, they may employ the force reasonably necessary to overcome the threat. *Lamont v. New Jersey*, 637 F.3d 177, 183 (3d Cir. 2011). This may include the use of take-down maneuvers. *E.g., Blacknall v. Citarella*, 168 Fed. Appx. 489, 491 (3d Cir. 2006) (no excessive force found where officer used a leg sweep to subdue suspect who struck him); *Moore v. Vangelo*, 222 Fed. Appx. 167, 171 (3d Cir. 2007) (no excessive force found where officer took suspect to the ground with a leg sweep so he could handcuff him).

With respect to allegations of excessive force in the use of handcuffs, this case is governed by *Graham-Smith v. Wilkes-Barre Police Dep't*, 739 F. App'x 727, 732 (3d Cir. 2018). *Graham-Smith*

held that mere complaints of tight handcuffs, without significantly more, are insufficient to maintain an excessive force claim. *Id.*

Not conceding that the Complaint contains an excessive force claim, it could not survive even if it did. Martinez testified to some discomfort and minor marks from the handcuffs, which went away and resulted in no permanent injury. SOMF ¶ 18. There is no constitutional guarantee against discomfort and temporary redness from handcuffs. The claim, to the extent there is one, must be dismissed. *See Id.*

## POINT V

### AS TO ALL CLAIMS, RIVERA IS ALTERNATIVELY ENTITLED TO QUALIFIED IMMUNITY.

Even were the Court to find that a material factual dispute exists as to any of Martinez's Constitutional claims, Rivera is entitled to qualified immunity.

Qualified immunity is applied after engaging in a two-prong analysis which asks whether a public official's conduct violates a constitutional right and whether that right was clearly established. *Pearson v. Callahan*, 555 U.S. 223, 232 (2009). While courts are free to choose which prong to assess first, *id.* at 236, an individual is entitled to qualified immunity if only one prong is in his favor. *Reedy v. Evanson*, 615 F.3d 197, 223-24 (3d Cir. 2010). Here, even if Martinez is afforded all reasonable

inferences, the Rivera is entitled to qualified immunity as to the constitutional claims against him.

Qualified immunity shields "government officials performing discretionary functions" from "civil damages liability as long as their actions could reasonably have been thought consistent with the rights they are alleged to have violated." *Anderson v. Creighton*, 483 U.S. 635, 638 (1987).

"The concern of the immunity inquiry is to acknowledge that reasonable mistakes can be made as to the legal constraints on particular police conduct." *Saucier v. Katz*, 533 U.S. 194, 205 (2001). "[W]hether an official protected by qualified immunity may be held personally liable for an allegedly unlawful official action generally turns on the objective legal reasonableness of the action, assessed in light of the legal rules that were clearly established at the time it was taken." *Messerschmidt v. Millender*, 565 U.S. 535, 546 (2012). "The inquiry focuses on the state of the relevant law when the violation allegedly occurred," *Williams v. Sec'y Pa. Dep't of Corr.*, 848 F.3d 549, 570 (3d Cir. 2017), and applies in cases alleging violations of the Eighth Amendment. *See Taylor v. Barkes*, 135 S. Ct. 2042 (2015).

"A clearly established right is one that is 'sufficiently clear that every reasonable official would have understood that what he is doing violates that right.'" *Mullenix v. Luna*, 136 S. Ct. 305, 308 (2015) (quoting *Reichle v. Howards*, 566 U.S. 658, 664

(2012)).   For a right to be considered "sufficiently definite," *Plumhoff v. Rickard*, 134 S. Ct. 2012, 2023 (2014), there must have been either "controlling authority" or a "robust consensus of cases of persuasive authority" on the books when the official acted that "placed the statutory or constitutional question beyond debate." *Ashcroft v. al-Kidd*, 563 U.S. 731, 741 (2011).   Qualified immunity thus "'gives government officials breathing room to make reasonable but mistaken judgments,' and 'protects all but the plainly incompetent or those who knowingly violate the law.'" *Messerschmidt*, 565 U.S. at 546 (quoting *al-Kidd*, 563 U.S. at 743).

"If officers of reasonable competence could disagree" about the lawfulness of an officer's behavior, "immunity should be recognized." *Malley v. Briggs*, 475 U.S. 335, 341 (1986); *see also Anderson*, 483 U.S. at 641 (asking "whether a reasonable officer could have believed" his conduct was lawful); *Berg v. Cty. of Allegheny*, 219 F.3d 261, 272 (3d Cir. 2002) ("In considering claims of qualified immunity, courts are sensitive to the broad range of reasonable professional judgment accorded law enforcement officials in the § 1983 context.") (citation omitted).   This "high standard for 'clearly established' law" is "tilted in favor of shielding government actors." *Zaloga v. Borough of Moosic*, 841 F.3d 170, 175-77 (3d Cir. 2016).

The Supreme Court recently reiterated "the longstanding principle that 'clearly established law' should not be defined 'at

a high level of generality,'" *White v. Pauly*, 137 S. Ct. 548, 552 (2017) (quoting *al-Kidd*, 563 U.S. at 742), "since doing so avoids the crucial question whether the official acted reasonably in the particular circumstances that he or she faced." *Plumhoff*, 134 S. Ct. at 2023. Because "[t]he dispositive question is whether the violative nature of *particular* conduct is clearly established," *Mullenix*, 136 S. Ct. at 308 (emphasis in original), the inquiry "must be undertaken in light of the specific context of the case, not as a broad general proposition." *Saucier*, 533 U.S. at 201.

For example, the general principle that excessive force is violative of the Constitution "is of little help in determining whether the violative nature of particular conduct is clearly established." *Al-Kidd*, 563 U.S. at 742. Instead, "there must be sufficient precedent at the time of action, factually similar to the plaintiff's allegations, to put defendant on notice that his or her conduct is constitutionally prohibited." *Mammaro v. N.J. Div. of Child Prot. & Permanency*, 814 F.3d 164, 169 (3d Cir. 2016); *see also Mullenix*, 136 S. Ct. at 312 (rejecting reliance on cases "too factually distinct to speak clearly to the specific circumstances" confronting official). Furthermore, "[w]here constitutional guidelines seem inapplicable or too remote, it does not suffice for a court simply to state that an officer may not use unreasonable and excessive force, deny qualified immunity, and then remit the case for a trial on the question of reasonableness."

26

*Kisela v. Hughes*, 138 S. Ct. 1148, 1153 (2018).

Under this "exacting standard," *City & Cty. of San Francisco v. Sheehan*, 135 S. Ct. 1765, 1774 (2015), which demands "fair and clear warning of what the Constitution requires," *al-Kidd*, 563 U.S. at 746 (Kennedy, J., concurring), an official is immune unless prior case law "squarely governs" the conduct at issue, *Brosseau v. Haugen*, 543 U.S. 194, 201 (2004), such that its objective unreasonableness "follow[s] immediately," *Mullenix*, 136 S. Ct. at 309, is "obvious," *Wilson v. Layne*, 526 U.S. 603, 615 (1999), and "apparent." *Anderson*, 483 U.S. at 640. Anything less would allow plaintiffs "to convert the rule of qualified immunity" into "a rule of virtually unqualified liability simply by alleging violation of extremely abstract rights," thereby "making it impossible for officials reasonably to anticipate when their conduct may give rise to liability for damages." *Anderson*, 483 U.S. at 639. This could have a chilling effect on the vigorous exercise of official authority. *See id.* at 638.

Qualified immunity should be granted on false arrest claims where there is arguable probable cause. *See Gilles v. Davis*, 427 F.3d 197, 205 (3d Cir. 2005); *Blaylock v. City of Philadelphia*, 504 F.3d 405, 412 (3d Cir. 2007) (noting that officer is entitled to qualified immunity where there is "arguable probable cause"). In *Gilles*, the plaintiff was arrested for making loud and rude comments in front of a crowd of people, and charged with disorderly

conduct. Although the charge was ultimately dismissed, the Third Circuit held that it did not follow that the arresting officer's actions were unreasonable. *Id.*

In this case, there was never a judicial finding that the charges against Martinez had no merit; they were dismissed based on prosecutorial discretion. SOMF ¶ 17. The Defense has demonstrated that there was probable cause for Martinez's arrest. *See* Point I. However, in the event the Court disagrees, or determines that there is a fact question with respect to probable cause, qualified immunity should still be granted because, as in *Gilles*, there was at the very least arguable probable cause. Rivera observed Martinez's loud and inappropriate comments and saw a youth school baseball practice obstructed. *See* Point I. He then perceived himself to be assaulted. *Id.* It was entirely reasonable for him to believe that he had a valid basis to arrest Martinez. The false arrest claim must be dismissed because Rivera is entitled to qualified immunity. And, when the false arrest claim fails, so too fail the malicious prosecution and retaliation claims.

Furthermore, Martinez cannot overcome the Supreme Court's unequivocal insistence on an "exacting standard" that dictates that immunity should be granted unless the plaintiff can demonstrate prior authority that "squarely governs" the conduct at issue. *City & Cty. of San Francisco*, 135 S. Ct. at 1774; *Brosseau*, 543 U.S. at 201. The Defense is aware of no case law that

specifically governs the precise factual scenario presented in this case such that Rivera would have been on notice that his action – in arresting and charging Martinez upon his good faith belief that he had created an unlawful public disturbance and assaulted him – violated the constitution and such that his actions could be considered objectively unreasonable. *Mullenix*, 136 S. Ct. at 309. The false arrest and malicious prosecution claims must be dismissed on the basis that there is no clearly established law governing this case.

There is also no law, clearly established or otherwise, that prohibits an officer of the law from arresting and charging someone whom he reasonably believes has committed a violation of the law simply because that individual is contemporaneously engaging in speech that may otherwise be protected. In fact, the Supreme Court has held that there is no such right. *See Reichle v. Howards*, 566 U.S. 658, 664 (2012) ("This Court has never recognized a First Amendment right to be free from a retaliatory arrest that is supported by probable cause; nor [is] such a right otherwise clearly established..."). As argued in Point III, the record evidence demonstrates that Rivera arrested Martinez for his unlawful conduct. The first amendment claim is unsupported by the facts, and in any event the Supreme Court has unequivocally held that qualified immunity must be granted under the instant set of facts. *See id.*

Finally, to the extent the Complaint contains an excessive force claim, qualified immunity should be granted. As noted in Point IV, *Graham-Smith* affirmatively demonstrates that the facts pled do not make out an excessive force claim, and that qualified immunity should be granted under circumstances where nothing is alleged but uncomfortable handcuffs and minor, temporary redness after the fact. *See* F. App'x 727 at 732.

Rivera should be granted qualified immunity as to all state and federal constitutional claims.

**CONCLUSION**

For these reasons, Rivera is entitled to summary judgment, and Plaintiff's Complaint should be dismissed, in its entirety, with prejudice.

> GURBIR S. GREWAL
> ATTORNEY GENERAL OF NEW JERSEY
>
> s/Kai Marshall-Otto
> Kai Marshall-Otto
> Deputy Attorney General

Date: April 12, 2019