**LOUGHRY and LINDSAY, LLC**
330 Market Street
Camden, New Jersey 08102
(856) 968-9201
By: Justin T. Loughry, Esquire (3473-JTL)
Attorneys for Joel Martinez

_____

| | |
|---|---|
| JOEL MARTINEZ, | UNITED STATES DISTRICT COURT |
| Plaintiff, | DISTRICT OF NEW JERSEY |
| v. | |
| COLONEL JOSEPH R. FUENTES, SUPERINTENDENT; LT. COLONEL PATRICK CALLAHAN, DEPUTY SUPERINTENDENT OF OPERATIONS; MAJOR KEVIN DUNN, DEPUTY BRANCH COMMANDER, FIELD OPERATIONS SECTION; JOHN DOE 1, TROOP C COMMANDER; JOHN DOE 2, SUPERVISOR; TROOPER I JOSE G. RIVERA (#6010); ACTING MAJOR MARK WONDRACK, OFFICE OF PROFESSIONAL STANDARDS; CAPTAIN SCOTT EBNER, BUREAU CHIEF, INTAKE AND ADJUDICATION BUREAU, OFFICE OF PROFESSIONAL STANDARDS, and DSG ISMAEL E. VARGAS. | Civil Action No. 15-2932 (BRM) |
| | **PLAINTIFF'S MEMORANDUM IN OPPOSITION TO DEFENDANT'S MOTION FOR SUMMARY JUDGMENT** |
| Defendants. | |

_____

## PRELIMINARY STATEMENT AND SUMMARY OF ARGUMENT

April is the cruelest month, says the poet. Had Eliot[1] witnessed the adulterous Trooper Rivera physically overpower and detain Joel Martinez without legal reason, in the presence of Mrs. Martinez, Rivera's adulterous partner, the poet would

_____

[1] "April is the cruelest month, the mixing of memory and desire, breeding lilacs out of the dead land" T.S. Eliot, The Wasteland.

recognize the injustice, if not the cruelty. A police officer should not wield his unbridled power, to silence personal criticism from a man whose family suffered from the Trooper's unethical personal choices. A sworn officer, invested with monopolistic police power, must not arrest a citizen who has committed no crime.   The officer must not punish with a groundless arrest a man whose only "offense" was to voice a momentary criticism in public of the Trooper's irresponsible personal behavior.

This case arises from just such an abuse of police power.

The record shows, and would permit a jury easily to find, that Joel Martinez did not engage in the conduct that defendant claims to have supplied a basis for arrest. Likewise, a jury has ample grounds in the evidence to find that no reasonable officer would have concluded otherwise.

To move for summary judgment, Trooper Rivera presents a self-serving factual scenario or version that other witnesses dispel in every important respect.

In its most telling aspect, Defendant Rivera claims that Plaintiff placed his hand on Trooper Rivera's arm or sleeve and that this physical act – interpreted by Rivera as a sign of disrespect for the State police uniform – somehow justified arrest, even though Trooper Rivera admits that Mr. Martinez never physically threatened harm and did not inflict any pain or

injury. Ex. E, Rivera Dep. 108:12 – 109:6, 90:9-22, 112:6-14. Rivera's sworn criminal complaint against Mr. Martinez alleges this supposed unlawful touching by Martinez in the form of Martinez placing his hand(s) on Rivera's arm, as the conduct (offensive touching) that violated the harassment statute.   See Exhibit 9 to Deposition of Rivera, attached as Ex. B to Cert of Marshall-Otto. The record, however, renders the occurrence or non-occurrence of this act a hotly disputed material "fact".

The record contains the sworn testimony of two independent eyewitnesses denying that Martinez made such contact. Mr. Martinez's estranged wife and a school official, both present just a few feet away from Martinez and Rivera in the critical moment--did not see Mr. Martinez make any physical contact with Rivera. See Loughry Cert, Ex. C, Goldenberg dep at 23:4-24:4, 32:21-33:12; Ex. G, Vicky Martinez dep at 55:9-14, 56:13-15. The non-party testimony, moreover, corroborates Mr. Martinez's insistence[2] that he did not grab Trooper Rivera's arm. Dep of Martinez at 33:13-17, 35:1-13, 58:12-16 attached as Ex. H to Cert

---

[2] As discussed more fully infra, the defense makes the implausible and unpersuasive claim that Mr. Martinez supposedly "admitted" to a state police officer at the barracks where he was detained, that he had grabbed Rivera's arm.   The defense has no report from the State Trooper who claims to have elicited such an admission from Mr. Martinez.   Indeed, in the considerable number of reports and other memorializations of the event, nowhere does there appear any such admission from Mr. Martinez.   Five years after the fact, the State Trooper Murtha mentions in his deposition testimony that Mr. Martinez supposedly made such an admission. Mr. Martinez denies same—still another material factual dispute precluding summary judgment against plaintiff. See Dep of Murtha at 27:7 – 29:15, 31:9-20, (Ex. D to the Cert of JTL), Dep of Martinez at 33:13-17, 35:6-13, 58:12-16 (Ex. H to Cert of JTL).

3

of Justin Loughry.   The contradictory testimony precludes any award of summary judgment to the defendant Trooper Rivera with respect to his arrest of Martinez for harassment.   That eyewitness testimony refutes Rivera's claim of an harassment-via-offensive-touching.

The defense attempts an artful dodge of these inconvenient conflicts in the evidence by arguing for good faith, qualified immunity based upon a novel, and frankly alarming idea:  that if Trooper Rivera "believes" his own facts, that belief suffices to establish that he acted in good faith. In other words, even if all the witnesses except for Rivera affirm that Mr. Martinez did not place his hand on Rivera's arm, those witnesses according to defendant mean nothing, if Rivera claims actually to have believed that Martinez grabbed Rivera's arm.   But nowhere does our case law teach such a primacy for subjective belief that an act occurred, when ample evidence from other sources shows the event did not occur.

A court must look at the evidence that, if believed, would tend to discredit the police officer's story, and consider whether this evidence could convince a rational factfinder that the officer acted unreasonably. Abraham v. Raso, 183 F. 3d 279, 294 (3d Cir 1999). In this case, the Plaintiff's proffered evidence from multiple sources surely would suffice, if believed (and it must be believed in a summary judgement analysis), to

4

convince a rational jury that the officer acted unreasonably. The conflicting evidence that the plaintiff presents, including the testimony of independent witnesses that Mr. Martinez never grabbed Rivera's arm, negates the very fact upon which the harassment/offensive touching charge depends. As such, it defeats probable cause and would render the arrest unlawful.

At most, the cases may grant some legitimacy and some measure of immunity if the officer acts upon a good faith but mistaken legal view—but not simply because an officer claims to have "believed" that a fact occurred which ample evidence demonstrates did not in fact occur. If the facts the officer recounts did not occur—i.e. if the jury rejects the officer's "facts" and therefore finds that the basis for probable cause ***did not exist***, then there can be no good faith immunity. See Estate of Smith v. Marascco, 318 F. 3d 140, 152-53 (3d Cir. 2005.) For any reasonable officer would refrain from arresting in the absence of facts needed to establish probable cause. If the jury credits the nonparty witnesses and rejects Rivera's claimed facts, then there can be no good faith immunity. Simply put, one cannot give controlling significance to an officer's insistence that he believed that plaintiff had assaulted him, when the evidence of record contains direct eyewitness accounts of the interaction that deny any such touching or assault to have taken place.

The criminal Summons-Complaint by Rivera against Martinez alleges a second basis for Mr. Martinez's arrest:  the supposed commission by Martinez of "disorderly conduct."

The specific allegation is as follows:

That Mr. Martinez purposely offended the sensibilities of another person by addressing unreasonably loud and offensively coarse or abusive language to Trooper Rivera in a public place, specifically by "***continuously berating and shouting profanities at Rivera in the presence of a high school baseball team***."  See Ex 9 to Rivera Dep, the Summons-Complaint, paragraph 1, attached as Ex. B and Ex. G to Cert of Marshall-Otto. (emphasis added).

These allegations rest on the *supposed* underlying facts that Mr. Martinez--

- Was shouting at Rivera  next to the ball field;

- Was continuously, repeatedly shouting profanities, including the word "fuck", at Rivera within the earshot of the high school baseball team (including its coaches); and

- Continued his profane, obscenity-laced tirade as the two men walked away from the field and toward the cars.

The evidence to support such "facts" comes from a single source: Trooper Rivera's account of what supposedly happened. But *every other witness's testimony refutes Rivera's story.*

Rivera alone claims that Mr. Martinez was shouting profanities, utilizing the word "Fuck" or its adjectival variants so loudly as to undoubtedly be heard by the baseball team and its coaches in the middle of the baseball field. Rivera alone insists that Martinez shouted such profanities multiple times both at the edge of the baseball field, near the dugout, and then as he and Rivera walked away from the field toward their cars parked on a nearby cul de sac. See Ex. E, Dep of Rivera 84:3-18, 86:2 – 87:21, 96:13 – 97:20, 99:5 – 102:6.

However, the other eyewitnesses report hearing no such profanities. See Cert of Loughry, Ex. A, Dep of Atlee 16:10-16, 29:25 – 30:9; Ex. C, Dep of Goldenberg 29:3-8; Ex. B, Dep of Eldridge 25:1-15. These other witnesses deny hearing the word "fuck" or any other profanity at any time. Id. The other witnesses report no screaming or hollering or yelling by Mr. Martinez. Ex. A, Dep of Atlee 14:14-23; Ex. C, Dep of Goldenberg 28:14-19, 34:23-35:6. They remember Mr. Martinez speaking in an elevated voice, but far short of screaming or hollering. Id. They heard none of the conversations the two men were having as they walked away from the ballfield—-because the two men were in unremarkable conversation, not sufficiently loud to be heard on the ball field. Ex. A, Dep of Atlee 28:19-25; Ex. B Dep of Eldridge 15:6-18, 25:16-26:4.

In other words, witnesses Eldridge and Atlee and Goldenberg contradict Rivera's claims and assertions about Martinez's supposedly "disorderly" conduct.  The other non-party witnesses contradict Rivera's account of a supposedly screaming, profanity-laced tirade by Martinez. Where Rivera depicts an out of control, obscenity strewing Martinez, the other witnesses recall Martinez registering in a somewhat elevated voice his concern over Rivera being present (across the street from the Martinez home).  The conduct by Martinez that the witnesses remember contained no such profane histrionics as Rivera conjures.  The coaches, moreover, do not depict any interruption in the baseball practice.

In sum, the record contains ample evidence that disputes and indeed contradicts Rivera's assertions of tumultuous, coarse language that supposedly created a disturbance.  The actual evidence in this case calls into question every one of Rivera's essential factual allegations. Thus, the record requires denial of his summary judgment motion, in that the evidence places each material factual assertion into direct and profound dispute.

Far from meriting the cloak of good faith immunity, our Trooper Rivera – for his misconduct at the scene and his shallow would-be justifications for it – deserves rebuke, not judicial deference.

8

In a fit of personal pique or embarrassment this police officer abused his solemn, armed, official power in effect to punish Martinez for what the officer must have deemed an embarrassing personal insult. Such is an abuse of official power; such official malfeasance betrays his oath to uphold the law. The facts and evidence read in the light most favorable to the non-moving party, here the plaintiff, demonstrate such an abuse of power via an arrest without probable cause.

No reasonable official would find it acceptable to arrest because a disappointed, betrayed husband addressed a critical comment about Trooper Rivera's adulterous conduct to that officer, whether in public or private. It simply was not a criminal offense.

## FACTS

In or about 2011, Joel and Vicky Martinez lived with their school age children in housing on the Lawrenceville Prep campus. Ex. G, Dep of Vicky Martinez at 9:24-10:19. Vicky worked for the school; Joel Martinez worked in finance. Ex. G, Dep of Vicky Martinez 11:7-15; Ex. H, Martinez dep 18:7-19:24.

In or about 2011 Vicky Martinez began an adulterous affair with State Police Trooper Jose Rivera.

Around Christmas time 2011, Jose Martinez learned of the affair when Mrs. Rivera contacted him to inform Mr. Martinez of Mr. Rivera's conduct. Ex. G, Dep of Vicky Martinez 19:3-21.

There followed months of upset, during which, according to Mr. Martinez, Trooper Rivera uttered threats to harm Mr. Martinez and his family if Martinez had any communications with Mrs. Rivera. Ex. H, Dep of Martinez 42:17-46:12.

The Martinez family, including the children, developed a certain amount of fear of the Trooper. Ex. H, Dep of Martinez 24:14-25:10.

Mr. Martinez moved out of the marital home eventually, but continued to visit his children there, and continued to store some of his effect such as clothing and/or luggage. Dep of Martinez, Ex. H, 21:15-19; Dep of Vicky Martinez, Ex. G, 20:9-24, 35:14-21.

In April 2013, Mr. Martinez was about to embark on a flight for some family business, and came by the house in the late afternoon to pick up a few items of clothing on his way to the airport. Dep of Martinez, Ex. H, 20:9-24. He saw a state police car parked on the cul de sac on which his family's home was located. He parked and saw that Trooper Rivera was on a baseball field next to the cul de sac, in his uniform, and mixing with a baseball team that was practicing. See Ex. H, Martinez dep at 22:16-23:10, 26:17-22.

Upset by the Trooper's presence in the mid afternoon when the Martinez children would likely be arriving home, Mr. Martinez approached the baseball field and addressed a remark to

the Trooper, in words or in substance questioning his judgment in being present so close to the Martinez's home, and asking if Rivera thought it acceptable to break up families. See Loughry Cert Ex. H, Martinez dep at 24:14-22, 27:8-13; Ex. A Atlee dep at 14:17-22.

Contrary to the claims later made by Rivera, Mr. Martinez did not scream or "holler" and did not utter any profanities. Rivera claims Martinez was hollering profanities the whole time, including plentiful use of the word "fuck" in all its several parts of speech. Mr. Martinez denies any such conduct on his part. The baseball coaches – who noticed Mr. Martinez's presence at the edge of the baseball field (outside its fence)-- remember that Mr. Martinez was elevating his voice somewhat, but without screaming, and without the use of any profanity whatsoever. See Cert of Loughry, Ex. A, Dep of Atlee 16:10-16, 29:25-30:9; Ex. C, Dep of Goldenberg 29:3-8; Ex. B, Dep of Eldridge 25:1-26:13.

The independent witnesses confirm that Rivera quickly walked off the field and over to Mr. Martinez, and that the two men almost immediately walked away from the ball field, up toward the cul de sac (about fifty feet away) where their respective cars were parked. See Cert of Loughry, Ex. A, Dep of Atlee 16:10-16; Ex. B, Dep of Eldridge 25:1-26:13; Ex. C, dep of Goldenberg at 12:23-13:23.

According to the coaches, the brief interaction between Rivera and Martinez featured no profanity, and no screaming or yelling; the deposition testimony of the coaches does not depict any disruption of the baseball practice.

Around the same time as the two men reached the cul de sac, Vicky Martinez pulled up in her car; shortly prior to her arrival, a school athletic trainer, Michael Goldenberg, arrived on his golf cart. There was some tense conversation, as Vicky Martinez and Joel Martinez and Rivera seem to have raised the question as to why one or another of them was present. There were comments to the effect that one or another should not be there. There was no mention of any court order or any other legal barrier to anyone's presence at the scene. See Ex. C, Dep of Goldenberg at 12:20-13:3, 15:8-16:9, 17:3-5.

Mr. Martinez continued to make comments about Rivera having acted badly in coupling with Mrs. Martinez and undermining the Martinez family. Martinez remembers suggesting that Rivera had no right to be so proximate to the Martinez home. When Rivera protested that he was an alumnus of the school, Martinez countered with the assertion that Rivera had never graduated and had flunked out. See Ex. H, Dep of Martinez at 34:11-35:15; Ex. C, Dep of Goldenberg at 16:2-9.

At some point Rivera grabbed Mr. Martinez and placed him down over the hood of a car, and handcuffed him, and told him he

was under arrest. Vicky Martinez pleaded with Rivera not to do so; Vicky later told investigators that she saw no reason for the arrest. Ex. G, Dep of Vicky Martinez 68:17 – 69:4. Ex. 1 to Goldenberg dep, attached as Ex. C to Cert of Loughry. Ex. B, Dep of Eldridge 31:12-21.

Rivera transported Martinez to a state police barracks, and charged him with disorderly conduct and harassment/offensive touching for allegedly having grabbed Rivera's arm. See Summons/Complaint attached as Exhibit G to Cert of Marshall-Otto.

Neither athletic trainer Goldenberg nor Vicky Martinez saw any such gesture of grabbing Rivera's arm by Martinez. Rather, each has testified that, from their vantage point just a few feet away, Mr. Martinez did not make any physical contact with Rivera. See Loughry Cert, Ex. C, Goldenberg dep at 23:4-24:4, 32:21-33:12; Ex. G, Vicky Martinez dep at 55:9-14, 56:13-15

And, just like the baseball coaches out on the field, neither Vicky Martinez nor Goldenberg heard Mr. Martinez use any profanity.

Martinez hired criminal defense counsel, demanded discovery, appeared several times in the local municipal court, and then succeeded in having the matter dismissed with prejudice when no discovery was forthcoming. See Ex. G to Cert of Marshall-Otto.

## **ARGUMENT**

### I.   **MATERIAL FACTUAL DISPUTES PRECLUDE SUMMARY JUDGMENT**

The State/Defendant maintains a set of factual propositions, supposedly beyond dispute, that would justify a finding of summary judgment in Defendant's favor.

The record, however, evinces sharp, significant evidence contradicting those assertions and defeating Defendant's wished-for indisputability.

Defendant suggests that the arrest (and charge) for disorderly conduct was for disrupting a baseball practice with supposedly uncontrolled, profane outbursts. Defendant further maintains that he arrested Mr. Martinez for "harassment" by offensive touching, claiming that Mr. Martinez illegally grabbed his arm.

At deposition, Defendant claimed he arrested Plaintiff after Plaintiff grabbed Rivera's left arm.[3] The record contains ample evidence that conflicts with and refutes Defendant's insistence that Plaintiff touched or grabbed his arm.

First, there were two eyewitnesses just a few feet away from Plaintiff and Defendant who testified to the contrary. Michael Goldenberg, a school official, at deposition said that

---

[3] At deposition Defendant insisted that Plaintiff grabbed Defendant's left arm. In Answers to Interrogatories, defendant insisted that plaintiff had grabbed defendant's right arm. See Dep of Rivera at 113; see defendant's response to Interrogatory # 4, attached to Certification of Justin Loughry.

he never saw Mr. Martinez touch the police officer; i.e. never saw a grabbing of his arm. Mrs. Martinez, the estranged wife and co-adulterer with Trooper Rivera, likewise saw so no such arm-grab. Finally, Mr. Martinez denied under oath at his deposition that he made any such contact with Defendant. Goldenberg Dep. 15:11 -16:9, 23:4 – 24:4. Vicky Martinez Dep. 54:22 – 55:14.

The jury would have to evaluate such a clear conflict in the evidence to decide whether or not the claimed basis for the arrest in fact actually occurred or did not occur.

The Defendant suggests that Martinez contradicted himself. The State points to a statement made by Thomas Murtha five years after the fact – not to sworn testimony of Martinez, not to a tape-recorded statement, not to a signed statement or a contemporaneous report, not even to contemporaneous notes made by Mr. Murtha. Mr. Martinez specifically denies having made the statement. At best, for Defendant, this creates a material factual dispute as to whether Martinez made or did not make the admission. Murtha Dep. 28:11 – 29:15, 30:23 - 31:23. Report of Incident, SP525.

Second, Defendant retreats to a bizarre, standardless, amorphous and legally irrelevant notion that Defendant somehow "believed" that Plaintiff had grabbed his arm, and that, standing alone, should justify summary judgment either because Plaintiff cannot rebut that belief or on the theory that such a

belief would provide a basis for "good faith" immunity. The proposition makes no sense; for if Plaintiff's evidence is believed, is credited by a finder of fact, then any contrary "belief" on Rivera's part would be groundless, without any basis in fact, and therefore could not amount to such "good faith" belief.

At the very least, the assertion that Defendant Rivera thought there was a grab would create a factual issue.

A court must look at the evidence that, if believed, would tend to discredit the police officer's story, and consider whether this evidence could convince a rational factfinder that the officer acted unreasonably. Abraham v. Raso, 183 F. 3d 279, 294 (3d Cir 1999).

In the main, the Defendant's analysis seems to rest on asserting a set of "alternative" facts – alternative to the competent testimony of other eyewitnesses.

The examples of factual conflict in the record are many, particularly when one examines the evidence on whether Mr. Martinez in fact, as Rivera alleges, engaged in screaming, profanity laced diatribe in front of the baseball players in a manner that disrupted a school baseball practice.

Here are some of the most striking examples of factual conflict:

Defendant asserts that Mr. Martinez disrupted the baseball practice with a loud and profane outburst. The record is otherwise. Not a single deposed witness verified the use of any profanity, and no witness from the baseball team or its coaches testified to any interruption or disruption of the baseball practice.

To illustrate, the baseball coach, Mr. Atlee, said he could tell Mr. Martinez was upset; he saw Mr. Martinez and Trooper Rivera in animated conversation outside the perimeter of the baseball field, but the players who were in the dugout could not see what was going on, and Rivera and Martinez moved out of earshot within fifteen to twenty seconds after the initial encounter. He said the upset by Mr. Martinez caused a momentary distraction, but not an interruption to any "practice". Atlee Dep. 15:4-9, 16:5-16, 19:4-10.

Trooper Rivera alleges that Mr. Martinez got louder and more profane when Rivera approached him as he was standing outside the fence enclosure of the baseball field and that Martinez leaned into the dugout screaming and hollering, calling out to the players "Your fucking coach, you know, had an affair with my wife." Rivera Dep. 83:23 – 84:17, 85:23 – 86:5, 87:14-25. According to Rivera, Martinez was repeatedly using the "F" word.

Coaches Atlee and Eldridge, in contrast, heard no profanity and for the most part, except for an initial comment, heard none of the substance of what Mr. Martinez was saying. When Martinez and Rivera were at the fence surrounding the baseball field and near the dugout, with the coaches nearby, Coach Atlee (in front of the dugout) could not overhear the two men's conversation. Atlee says they were briefly there at the edge of the field and then they walked away together, again conversing but not loud enough for the coach to hear any of their words. See Ex. A, Atlee dep at 15:4-9, 16:10-16, 28:19-25. Eldridge similarly could not hear what the two men were saying.  Like Atlee, Eldridge did not hear any profanity. See Ex B, Eldridge dep at 25:1-26:20.

Rivera's account encounters contrary evidence not just from the two coaches, but also from witness Goldenberg, the athletic trainer who pulled his golf car over toward Rivera's car, parked on the cul de sac. Goldenberg arrived at that spot as Rivera and Martinez were walking up from the ball field to the cul de sac. He watched their progress toward the cul de sac's edge and he could see that they were talking.

Now, Rivera's claim is that while walking away from the field accompanied by Trooper Rivera, Martinez was loudly declaiming in English his profane tirade against Trooper Rivera. He also alleges that Martinez continued to be so loud and

profane that he was sure the coaches and players were able to hear him as they walked away. Rivera Dep. 99:15-17, 100:15 – 102:15.

Atlee and Eldridge each say that they could not hear what Martinez was saying as the two men walked away from the field's edge toward the cul de sac.

Goldenberg also remembers the event very differently than Rivera. For Goldenberg, the two men were talking, perhaps in animated way, but in Spanish. Like Atlee and Eldridge, Goldenberg heard no profanity. Ex C, Dep of Goldenberg at 12:23-13:23.

The record thus presents a clear case of factual dispute on virtually every material issue as to whether probable cause existed or not for the arrest and the charges signed by Rivera.

In this case, Rivera claims he had probable cause regarding disorderly conduct and harassment because Mr. Martinez was supposedly screaming profanities and his scandalous diatribe in the presence of innocent school children, and then continuing his supposedly profane rant into the cul de sac as he disregarded instructions from Rivera to quiet down and leave the area. Whether such conduct actually could qualify as criminal is subject to question. But for purposes of this motion, even assuming that a Rivera-described scenario might qualify as "criminal" conduct, the plaintiff tenders the testimony of four

non-party witnesses—the two coaches and Goldenberg as well as Vicky Martinez—whose testimony refutes Rivera's claimed "facts". These witnesses heard no profanity from Mr. Martinez. They heard no screaming. They do not depict a baseball practice's disruption.

And ultimately, Vicky Martinez and Goldenberg, standing a few feet away from Rivera and Martinez, did not see Martinez make any physical contact with the Trooper. The very alleged facts that Rivera would use to find probable cause are in contest; the other witnesses say that those "facts" are untrue.

Defendant has failed to demonstrate any entitlement to summary judgment, in light of these disputed factual issues.

## II.  NOR HAS RIVERA ESTABLISHED THE RIGHT TO QUALIFIED IMMUNITY.

To prevail against a "defense" of qualified immunity, a plaintiff must demonstrate that defendant violated a constitutional right and that the right was clearly established as of time of the violation. District of Columbia v. Wesby, 138 S. Ct. 577, 589 (2018).

"A decision on qualified immunity will be premature when there are unresolved disputes of historical fact relevant to the immunity analysis." Curley v. Klem, 298 F.3d 271, 278 10 (3d Cir. 2002) ("Curley I"); see also Reitz v. County of Bucks, 125

F.3d 139, 147 (3d Cir. 1997). Material disputes of historical fact must be resolved by the jury at trial. Id.

In the present case, the right to be free of unlawful arrest and malicious prosecution is clearly established, and the defendant really does not argue to the contrary. What defendant seeks to do is to circumvent or bypass the many unresolved questions of historical fact which are relevant here to the immunity analysis.

Here, the defendant argues, essentially, that his ***belief*** in an historical fact (i.e. that the plaintiff grabbed the defendant's arm) --somehow cures or eliminates from significance the conflicting "**historical**" evidence –that such an arm grab did not occur. That has never been the law. It is true that if the facts and circumstances (one adds, the undisputed facts) are sufficient in themselves to warrant a reasonable person to believe that an offense has been committed by the person to be arrested, then the police officer may enjoy qualified immunity. Orsatti v. NJ State Police, 71 F. 3d 480, 482 (3d Cir. 1995). But whether those historical "facts" are true or whether they are a self-serving fabrication by the officer presents a jury issue; a court must look at the evidence that, if believed, would tend to discredit the police officer's story. In the presence of such conflicting evidence, the court is not free to grant qualified immunity. Id. The court is ultimately looking to

determine whether the evidence discrediting the officer suffices to show that the officer acted unreasonably. <u>Abraham v. Raso</u>, 183 F. 3d at 294.

Thus, in the present case, if the plaintiff's tendered evidence is believed, there was no screaming any profanity laced tirade; there was no disruption of the baseball practice; there was no offensive touching by Martinez on Rivera's arm;  and the supposed "probable cause" for the arrest and the two criminal charges disappears.

If the plaintiff's evidence is believed, then no reasonable officer would make the arrest and bring the charges that Rivera did. Therefore, the defendant cannot secure a qualified immunity ruling that would justify summary judgment.

### III. THE COURT SHOULD NOT DISMISS OR OTHERWISE GRANT JUDGMENT ON THE COMPLAINT'S CLAIM OF A FIRST AMENDMENT VIOLATION, BECAUSE THE OFFICER TOOK ACTION AGAINST PLAINTIFF TO SUPPRESS AND PENALIZE HIS PROTECTED EXPRESSION.

The first amendment protects protected speech from official punishment or retaliation.

To prevail on a first amendment right claim, the plaintiff must show that he engaged in protected activity or expression; that the government responded with retaliation; and that the protected activity was the cause of the retaliation.  <u>Anderson v. Davila</u>, 37 V.I. 496, 125 F. 3d 148, 161 (3d Cir. 1997).

The Defendant argues that Rivera arrested Martinez not for protected speech, but for the crimes or offenses of disorderly conduct (disrupting a baseball practice with yelling and profanity) and for harassment, via an alleged offensive touching.

The defendant's argument for summary judgment on the First Amendment "retaliation" claim depends on defendant's prevailing on summary judgment on the disorderly persons and harassment issues.  In other words, defendant is arguing that plaintiff must lose on the First Amendment claim if plaintiff in fact as a matter of law committed disorderly conduct or harassment, since that would become the basis of the arrest and the lodging of criminal charges.

But since the defendant has not demonstrated his entitlement to summary judgment on plaintiff's claim of wrongful arrest—i.e., since material factual disputes persist as to the facts upon which probable cause depends, the defendant has no entitlement to summary judgment on plaintiff's claims for wrongful arrest and wrongful seizure of his person, or the malicious prosecution that followed.

Should the plaintiff prove that the officer lacked probable cause for the arrest, then the jury may also find that Rivera moved against plaintiff to suppress or punish his voicing of public criticism of Rivera. In other words, plaintiff would be

able to demonstrate that Rivera violated his First Amendment right to free speech by the arrest.

Defendant relies on cases such as <u>Police v. Enciso</u>, 39 Fed. Appx. 692, to urge summary judgment on the First Amendment claim but that case –distinguishable on its facts— illustrates why and how the defendant's motion for summary judgment against the First Amendment claim must fail.

In <u>Police</u>, the plaintiff obstructed a gas company's entry onto the couple's private property, but the gas company held a legally enforceable right to such access.  Plaintiffs were vocal critics of the gas company and its policies; when the police responded to arrest plaintiffs, the plaintiffs deemed it retaliation against them for being outspoken in their criticisms of the gas company.

The court disagreed, finding that the evidence showed conclusively that plaintiffs had illegally obstructed the gas company's enjoyment of its easement or right of way, and that the police arrested the plaintiffs for their illegal acts in denying the gas company entry onto and across the plaintiffs land.  Since the arrest was for these illegal acts, it could not have been the First Amendment violation that the plaintiffs alleged.

<u>Police's</u> outcome – dismissing the First Amendment claim— depended upon the court's finding that the police arrested

24

plaintiffs for substantive illegal conduct, i.e. blocking access to the gas company when the gas company had obtained the legal right to access and entry.

For _Pulice_ to apply to Martinez's claim, it would be necessary for the court to find as a matter of law that Rivera arrested Martinez for disorderly conduct, and harassment, and that the arrest was legitimate because there was probable cause to believe that Martinez had in fact committed those offenses.

As argued _supra_, there was no probable cause for the arrest on disorderly conduct or harassment, and so the First Amendment claim — that Rivera arrested Martinez for his public expression of criticism of Rivera's conduct — remains intact, presenting an issue for the jury as to whether Rivera was penalizing Martinez for his outspoken criticism and commentary on Rivera's past conduct.

**CONCLUSION**

Defendant Rivera's demand for summary judgment overlooks the substantial evidence that discredits Rivera's account of Martinez's conduct. Rivera ultimately is the sole source of "proof" that Mr. Martinez disrupted a baseball practice, screamed profanities, and physically touched or assaulted Officer Rivera. Every other witness's testimony conflicts with Rivera. Every other witness's testimony shows the absence of the claimed facts that Rivera conjures to make out probable cause.

Neither athletic trainer Goldenberg nor Vicky Martinez saw Martinez grab Rivera's arm. Rather, each has testified that, from their vantage point just a few feet away, Mr. Martinez did not make any physical contact with Rivera.

By the same token, neither Vicky Martinez nor trainer Goldenberg heard Mr. Martinez use any profanity.

The testimony at deposition of coaches Attlee and Eldridge likewise refute Rivera's account of Mr. Martinez's conduct. These witnesses describe conduct that does not remotely approach illegality.

Mr. Martinez suffered humiliation and loss of liberty, if only for several hours, from Rivera's unreasonable decision to arrest and charge him with criminal conduct. The municipal court dismissed those charges. But that dismissal does not cure and does not compensate for the wrong Mr. Martinez suffered at the hands of a police officer who acted against him without basis.

Joel Martinez deserves his day in court. The Court should deny the defense motion for summary judgment in all respects.


                              LOUGHRY and LINDSAY, LLC
                              Attorneys for Plaintiff,
                              Joel Martinez


                         By: */s/ Justin T. Loughry*
Dated:  May 22, 2019          Justin T. Loughry, Esquire